# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **EMIGRANT RESIDENTIAL LLC,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **LINDA S. PINTI, LESLEY R. PHILLIPS, AND ANY AND ALL OCCUPANTS,** | ) | **No. 19-cv-12258-DJC** |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                 **March 24, 2021**

## I.      Introduction

Plaintiff Emigrant Residential LLC ("Emigrant") has sued Defendants Linda S. Pinti ("Pinti"), Lesley R. Phillips ("Phillips") and any and all occupants of a property located at 1643 Cambridge Street #52, Cambridge, Massachusetts ("the Property") (collectively, "Defendants") seeking a declaratory judgment to strike the discharge of mortgage from title of the Property.  D. 1.  Defendants counterclaimed that Emigrant perpetrated fraud on the Court, engaged in unfair and deceptive business practices in violation of Mass. Gen. L. c. 93A and intentionally and negligently inflicted emotional distress.  D. 20.  Emigrant now moves for summary judgment on its claims and Defendants' counterclaims.  D. 28.  For the reasons stated below, the Court ALLOWS the motion.

## II.      Standard of Review

The Court grants summary judgment where there is no genuine dispute regarding any

1

material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A material fact is one that "carries with it the potential to affect the outcome of the suit under the applicable law."  García-González v. Puig-Morales, 761 F.3d 81, 87 (1st Cir. 2014) (quoting Newman v. Advanced Tech. Innovation Corp., 749 F.3d 33, 36 (1st Cir. 2014)) (internal quotation mark omitted).  The moving party "bears the burden of demonstrating the absence of a genuine issue of material fact."  Rosciti v. Ins. Co. of Pa., 659 F.3d 92, 96 (1st Cir. 2011) (citation omitted).  Once that burden is met, the non-moving party may not rest on the allegations or denials in his pleadings.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Instead, "with respect to each issue on which [he] would bear the burden of proof at trial," he must "demonstrate that a trier of fact could reasonably resolve that issue in [his] favor."  Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010) (citations omitted).  The Court views the record in the light most favorable to the non-moving party, "drawing reasonable inferences" in his favor.  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citation omitted). "Conclusory allegations, improbable inferences, and unsupported speculation," however, are "insufficient to establish a genuine dispute of fact."  Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, 146 (1st Cir. 2013) (citation and internal quotation marks omitted).

## III.    Factual Background

The following facts, which are undisputed unless otherwise noted, are drawn from Emigrant's statement of material facts, D. 30, Defendants' response and Defendants' statement of material facts, D. 45-5, Emigrant's response, D. 47, and exhibits referenced in these filings.

Pinti and Phillips executed and delivered a promissory note to Emigrant Mortgage Company, Inc. ("EMC") for $160,000.000 ("Pinti Note") on March 13, 2008.  D. 45-5 ¶ 1.  On that same date, Pinti and Phillips provided a mortgage ("Pinti Mortgage") on the Property to EMC

to secure the Pinti Note and recorded it with the Middlesex County (Southern District) Registry of Deeds.  Id. ¶ 3.  A little more than a year later, on August 1, 2009, Defendants defaulted on the Pinti Note by failing to make payment and all subsequent payments thereafter.  Id. ¶ 48; see D. 31-1 at 31.  Defendants, however, continue to pay taxes, insurance, and condominium fees.  D. 45-3 ¶¶ 27-28.  EMC sent Defendants a 90-day notice of right to cure on September 29, 2009.  D. 45-5 ¶ 5.

On November 30, 2009, EMC assigned the Pinti Mortgage to ESB-MH Holdings, LLC ("ESB-MH") and recorded it with the Middlesex County (Southern District) Registry of Deeds ("ESB-MH Assignment").  Id. ¶ 6.  Plaintiff Emigrant is the successor-by-merger to ESB-MH.  Id. ¶ 7.  That same day, ESB-MH assigned the Pinti Mortgage to Federal Home Loan Bank of New York ("FHLBNY") however it was not delivered.  Id. ¶ 8-9.

Defendants subsequently failed to cure their default by December 28, 2019, the expiration date of the 90-day notice of right to cure, and EMC initiated foreclosure proceedings on the Property.  Id. ¶ 10.  On September 22, 2010, Pinti filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.  Id. ¶ 11.  Pinti later obtained a discharge in the bankruptcy on February 4, 2011.  Id. ¶ 12.

On August 22, 2011, EMC served a written response to a Qualified Written Request from the Defendants, which provided Defendants with information pertaining to the ownership of the Pinti Mortgage.  Id. ¶ 13.  It named ESB-MH as the owner of the loan and EMC as the servicer of the loan.  D. 31-1 at 42.  It also explained that the transferring ownership of the note and mortgage to ESB-MH was not recorded and that the Pinti Note and Pinti Mortgage, as well as the assignment of the Pinti Mortgage were in the possession of EMC.  Id.  About a year later, on August 9, 2012,

EMC sold the Property to Harold Wilion ("Wilion") for $260,000 and recorded the foreclosure deed with the Middlesex County (Southern District) Registry of Deeds.  D. 45-5 ¶¶ 14-16; 19.

EMC's assistant treasurer, Joel Marcano ("Marcano") attests in a sworn affidavit that under "EMC's established loan servicing policies and procedures" when EMC receives foreclosure sale proceeds from a third party purchaser following a foreclosure sale, EMC's loan servicing department prepares a memorandum to  EMC's loan payoff department that states the amount of the funds received, a confirmation that the fund was received following a foreclosure sale to a third party and instructions that the discharge of mortgage should not be prepared or sent to the foreclosed borrower.  D. 31 ¶ 18.  Marcano also attests that neither EMC nor Emigrant has a policy of providing a discharge of mortgage to a borrower upon receiving proceeds from a third-party purchaser following a foreclosure.  Id.  ¶ 19.

Despite this policies and procedures, on September 18, 2012, Anna Sorvillo, an EMC employee at the time, prepared a memorandum for another EMC employee, Juan Minier ("Minier") stating that a third party paid off the loan for the Pinti Note in the amount of $260,000.00, the amount of the foreclosure sale, requested that Minier credit $48,289.92 to an account for "Legal, RESPA and appraisal," and requested that Minier provide James Jung with "a copy of the credit advance."  D. 31-1 at 95.   The memorandum did not note that the funds were received following a foreclosure on the Property nor did it discuss whether Minier should prepare a discharge of the Pinti Mortgage.  See id.  Nonetheless, on October 3, 2012, EMC prepared a discharge of the Pinti Mortgage and sent it to Defendants for recording.  See D. 31-1 at 99. Marcano attests that EMC staff prepared the discharge by mistake as a result of the omissions in the memorandum.  D. 31 ¶¶ 25-27.  Neither EMC nor Emigrant have returned the Pinti Note, cancelled or otherwise to Defendants.  Id. ¶ 28, D. 45-5 ¶ 28.

On October 29, 2012, Wilion filed a summary process action against the Defendants for possession of the Property.  Id. ¶ 30.  On November 7, 2013, the state district court entered judgment in favor of Wilion and EMC.  Id. ¶ 32.  On Defendants' appeal, the Supreme Judicial Court ruled that EMC's notice of right to cure failed to comply strictly with the notice provisions set forth in the Pinti Mortgage, voiding the foreclosure sale.  D. 45-5 ¶¶ 34-35; Pinti v. Emigrant Mortg. Co., Inc., 472 Mass. 226, 233–38 (2015) ("Pinti I").  In light of this decision, Emigrant returned the foreclosure sale proceeds to Wilion.  D. 45-5 ¶ 39.  Since Pinti I, EMC has made bi-annual payments to the City of Cambridge for real estate taxes assessed to the Property.  D. 45-5 ¶ 41.

After Pinti I, on July 29, 2015, Pinti recorded the discharge of the Pinti Mortgage with the Middlesex County (Southern District) Registry of Deeds.  Id. ¶ 38.  Defendants, however, have not exercised their right of redemption in the Property by satisfying the total debt owed under the terms of the loan.  D. 45-5 ¶ 42.  On or about December 30, 2015, EMC sent the original Pinti Note and the original recorded Pinti Mortgage to Emigrant's counsel.  D. 32 ¶ 14.

On June 17, 2016, EMC sued Defendants in this Court (Wolf, J.) seeking a declaratory judgment, *inter alia*, striking the discharge of the Pinti Mortgage from title to the Property.  D. 45-5 ¶ 46; see Emigrant Mortgage Company, Inc. v. Pinti et al., 16-cv-11136-MLW (D. Mass. Jan. 17, 2019) ("Pinti II").  Defendants asserted counterclaims, seeking a declaratory judgment that Defendants owned the Property free of any mortgage, as well as a claim for negligent infliction of emotional distress.  Pinti II, D. 30.  EMC moved for summary judgment on its claim and Defendants' counterclaims.  Pinti II, D. 35.  The Court allowed in part and denied in part the motion, allowing it with respect to Defendants' counterclaim for negligent infliction of emotional distress, but otherwise denying it without prejudice.  Pinti II, D. 54.  The Court held a two-day

bench trial on January 9, 2019 and January 10, 2019.  See Pinti II, D. 112 & D. 113.  After the bench trial, the Court in Pinti II dismissed the case "because plaintiff [EMC] lacks standing." Pinti II, D. 109.  In Pinti II, the Defendants, same as in this case, argued that EMC was not the mortgagee on August 9, 2012 because the Pinti Mortgage had been assigned to ESB-MH.  Pinti II, D. 45 at 19-20.  The Court agreed, ruling that EMC was not the mortgagee of the loan in August 2012 because the Pinti Note had been previously assigned to ESB-MH and that ESB-MH did not reassign it to EMC.  Pinti II, D. 110 at 5, 8.  Thus, the Court held that "ESB-MH was the mortgagee on August 9, 2012.  EMC was not the proper entity to attempt to foreclose by entry."  Id. at 17. The Court then dismissed EMC's action without prejudice.  D. 45-5 ¶ 60.

EMC moved for reconsideration of the Court's order dismissing its claim to strike the discharge of the Pinti Mortgage, arguing that it is the real party in interest under a subservicing agreement that authorized it to commence proceedings on behalf of ESB-MH and required Emigrant to indemnify ESB-MH for certain losses.  D. 45-5 ¶ 61; Pinti II, D. 116 at 7.  The Court denied the motion because EMC had not raised this argument at trial.  Pinti II, D. 121 at 4, 7.  The Court noted its skepticism that EMC, as the servicer of a loan was the proper party to bring the case to strike the discharge of the mortgage.  Id. at 6.  The Court, moreover, stated that the holder of the Pinti note could seek to strike the allegedly mistaken discharge of the Pinti Mortgage.  Id. at 7.

After the Court's ruling in Pinti II, ESB-MH delivered the assignment of the Pinti Mortgage to FHLBNY.  D. 31-1 at 40-41.  FHLBNY subsequently assigned the Pinti Mortgage to Emigrant on June 24, 2019.  Id. at 104.

**IV.    Procedural History**

Emigrant filed this complaint on November 4, 2019.  D. 1.  On December 31, 2019, Defendants moved to dismiss Emigrant's claim seeking a declaratory judgment.  D. 7.  The Court denied Defendants' motion to dismiss.  D. 13.  Defendants then filed an answer with counterclaims against Emigrant.  D. 20.  Emigrant has moved for summary judgment on its declaratory judgment claim as well as Defendants' counterclaims.  D. 28.  In response, Defendants moved for discovery under Fed. R. Civ. P. 56(d), D. 35, which this Court denied.  D. 43.  The Court heard the parties on the summary judgment motion and took the matter under advisement. D. 60.

**V.    Discussion**

**A.    Emigrant's Claim Is Not Barred by _Res Judicata_**

Defendants argue that Emigrant's claim is barred by the doctrine of *res judicata* because in Pinti II, EMC "failed to bring up the fact that they had standing to challenge the discharge as the servicer under the mortgage."  D. 45-1 at 3.  Defendants further assert that EMC's failure "forever waived their rights to reinstate the mortgage."  Id.  A claim is precluded under *res judicata* if there is "(1) a final judgment on the merits in an earlier action; (2) sufficient identity between the causes of action asserted in the earlier and later suits; and (3) sufficient identity between the parties in the two suits."  Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc., 181 F.3d 174, 177 (1st Cir. 1999) (citation omitted).

Defendants' argument fails on the first prong because there was no final judgment on the merits in an earlier action.  The Court in Pinti II dismissed EMC's claim because EMC lacked standing.  Pinti II, D. 109.  "The standing inquiry does not focus on the merits of the dispute.  It focuses only on whether the litigant is entitled to have the court decide the merits of the dispute." City of Hope Nat. Med. Ctr. V. HealthPlus, Inc., 156 F.3d 223, 228 (1st Cir. 1998) (citation and

quotation omitted).  Given that the Court did not reach the merits, Emigrant's claims are not barred by *res judicata*.  See McCarney v. Ford Motor Co., 657 F.2d 230, 234 (8th Cir. 1981) (ruling that "a dismissal based upon a lack of standing is not on the merits of the underlying substantive claim and is not a bar to asserting another theory of relief based upon the same operative facts assuming the other elements of claim preclusion are satisfied") (internal quotation marks omitted).

This is particularly true here where the Court in Pinti II, dismissed EMC's claims without prejudice.  See O'Connell v. Gross, No. 19-11654-FDS, 2020 WL 1821832, at * 4 n. 3 (D. Mass. Apr. 10, 2020) (noting that even if court had reached issues in the case, claim preclusion was not applicable where complaint was dismissed without prejudice).  The Court in Pinti II further indicated that its decision was not a final adjudication on the issue, noting that "a new case can be filed by the party or parties with standing to contest the discharge of the mortgage.  It is likely that another case will be filed by the noteholder to foreclose.  It appears that the noteholder –or if [EMC] has standing, the noteholder and [EMC]—could in that case, or another, again seek to strike the allegedly mistaken discharge of the mortgage." Pinti II, D. 121 at 7.  For all these reasons, the first prong for res judicata has not been met and, the Court concludes  that Emigrant's claims are not barred by *res judicata*.

### B.    Emigrant Has Standing to Recover Possession of the Property

The term "mortgagee" applies to a person or entity holding the mortgage and either holding the mortgage note or acting on behalf of the note holder.  Eaton v. Fed. Nat'l Mortg. Ass'n, 462 Mass. 569, 571 (2012).  The mortgagee is entitled to foreclose on the secured property in the event of default.  Id. at 579-80.  Before initiating a foreclosure, however, the mortgagee must hold the mortgage pursuant to a valid, written assignment and be able to provide proof of such.  See U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 649-52 (2011).

Contrary to Defendants' assertion, Emigrant has established, based upon the undisputed record, that it is the owner of the Pinti Mortgage.  In November 2009, EMC assigned the Pinti Mortgage to ESB-MH, Emigrant's predecessor-by-merger, and recorded same.  D. 45-5 ¶¶ 6-7. Defendants argue, however, that Emigrant lacks standing because ESB-MH assigned the Pinti mortgage to FHLBNY.  D. 45-1 at 4-5.  While Emigrant assigned the Pinti Mortgage to FHLBNY in November 2009, as the Court in Pinti II concluded, it was not delivered.  Pinti II, D. 110 at 16. After the Court's ruling in Pinti II, ESB-MH then delivered the assignment to FHLBNY, D. 31-1 at 40-41, and FHLBNY subsequently assigned the Pinti Mortgage to Emigrant on June 24, 2019. D. 31-1 at 104.  Thus, the current record establishes that as of June 24, 2019, Emigrant is the holder of the Pinti Mortgage.  See Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 10-14 (1st Cir. 2014).

Defendants argue that the assignment was a void transfer given that the Pinti Mortgage was discharged and that the transfer was not valid because Emigrant has not clarified why "the duration of FHLBNY's ownership of the Pinti Mortgage being different from the executed date."  D. 45-1 at 5.  Defendants have not submitted any evidence "to contravene the authenticity or veracity of the Mortgage and the Note."  Deutsche Bank National Trust Company as Trustee of Ameriquest Mortgage Securitas, Inc. Asset Backed Pass Through Certificates, Series 2005-R3 v. Grandberry, 388 F. Supp. 3d 65, 69 (D. Mass. 2019).  Although Defendants sought discovery relating to this matter, D. 35, such would be futile because even if the assignment of the Pinti Mortgage is somehow deficient, Defendants lack standing to assert such a challenge.  See Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 291 (1st Cir. 2013) (holding that "a mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title").  Here, Emigrant has proffered:  (1) the Pinti Note executed by EMC with respect to the Property in March 2008, D. 31-1 at 1; (2) the Pinti

Mortgage securing that note executed by EMC on that same date, id. at 8; (3) a notarized assignment of the Pinti Mortgage executed by the Vice President of EMC from EMC to ESB-MH, id. at 35; (4) a certificate of merger between ESB-MH and Emigrant, id. at 36; (5) a notarized assignment of the Pinti mortgage executed from ESB-MH to FHLBNY, id at 41; (6) and a notarized assignment of the Pinti Mortgage executed by FHLBNY to Emigrant. Id. at 104.  The written assignments satisfy the criteria for a valid assignment of the Pinti Mortgage under Mass. Gen. L. c. 183 § 54B.  See Deutsche Bank National Trust Company, 388 F. Supp. 3d at 69 (holding that "[a]n assignment of a mortgage if executed before a notary public by a person purporting to hold the position of vice president of the entity holding such mortgage shall be binding upon such entity…") (citations and quotations omitted).  Based on these documents and the otherwise undisputed record, the Court concludes that Emigrant is the current holder of the Pinti Mortgage.

**C.**     **Emigrant Has Established That the Mortgage Was Discharged in Error**

The Court turns now to Defendants' argument that the assignment from FHLBNY that Emigrant relies upon here was a void transfer given that the Pinti Mortgage was discharged prior to the recording of the assignment. D. 45-1 at 4.  Once a mortgage is extinguished by discharge, there is "nothing to assign."  Gleason v. Dorney, 332 Mass. 646, 648 (1955).  "It is the general rule [however] that, where a mortgage has been discharged by mistake, equity will set the discharge aside and reinstate the mortgage to the position the parties intended it to occupy, where the rights of intervening lienors have not been affected."  North Easton Co-op. Bank v. MacLean, 300 Mass. 285, 292 (1938) (citations omitted); see, e.g., Provident Coop. Bank v. James Talcott, Inc., 358 Mass. 180, 187-90 (1970); East Boston Sav. Bank v. Ogan, 428 Mass. 327, 329-32 (1998).

Here, the undisputed record establishes that the Pinti Mortgage was discharged by mistake. As evidence of same, Emigrant provides a sworn affidavit from Marcano that states that "EMC inadvertently prepared a discharge of the Pinti Mortgage" because EMC's September 18, 2012 memorandum "failed to properly inform Minier that a Discharge of Mortgage should not be prepared and sent to the Defendants." D. 31 ¶¶ 25-27. Defendants argue that Marcano is "merely speculating" that the discharge was made in error, that it is self-serving hearsay and does not rely on business records prepared prior to the September 18, 2012 memorandum. D. 45-5 ¶ 25.

Here, however, Marcano has attested to same based upon his "personal knowledge." D. 31 ¶ 3. "A party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 961 n. 5 (1st Cir. 1997). Marcano's affidavit, moreover, falls within a hearsay exception as he is a "qualified affiant whose declaration sufficiently authenticates the business records [he] provides." Hays v. Jefferson Capital Systems, LLC, No. 15-cv-14025-GAO, 2017 WL 449590, at *2 (D. Mass. Feb. 2, 2017) (citing Wallace Motor Sales, Inc. v. Am. Motors Sales Corp., 780 F.2d 1049, 1061 (1st Cir. 1985) and Schwartz v. CACH, LLC, No. 13-12644-FDS, 2014 WL 298107, at *2 n.2 (D. Mass. Jan. 27, 2014) (considering affidavit where affiant had custodial responsibilities and personal knowledge regarding business records)). Marcano attested in his affidavit that he was familiar with the records that "were made and maintained in the regular or ordinary course of business of EMC." D. 31 ¶ 3. The Court will, therefore, rely upon Marcano's sworn statement that the discharge was in error. See United States v. Sayer, 450 F.3d 82, 88 (1st Cir. 2006) (affirming summary judgment on mortgage deficiency based on "sworn declaration stating the amount owed based on [plaintiff's] business records and the. . . affiant's personal knowledge of the [defendant's] loan account")

(internal alterations omitted); Cremaldi v. Wells Fargo Bank, No. 13-11767-MLW, 2017 WL 1190377, at *3 (D. Mass. Mar. 30, 2017) (finding a sufficient foundation for an assertion of personal knowledge at summary judgment stage when affiant stated that she was "familiar with the business records maintained by [defendant] for the purpose of servicing mortgage loans and [has] personal knowledge of the operations and the circumstances surrounding the preparation, maintenance and retrieval of records in [defendant's] recordkeeping systems"); see HMC Assets, LLC. v. Conley, No. 14-10321-MBB, 2016 WL 4443152, at *4 (D. Mass. Aug. 22, 2016) (holding that "an affiant is only required to have some familiarity and ability to explain the maintenance of the business records in question, especially when elements of trustworthiness are present").

Defendants appear to argue that there is a factual dispute in the record as to whether the discharge was in error because Sorvillo attested in her deposition that she did not feel that she had made a mistake in preparing the September 18, 2012 memorandum. D. 45-5 ¶ 22; see D. 36-1 at 29. Sorvillo's subjective belief or intentions, however, are not at issue here, but rather the objective indications of corporate actors. Here, it is undisputed that EMC discharged the Pinti Mortgage in error where Defendants do not dispute that neither EMC nor Emigrant have returned the Pinti Note, cancelled or otherwise to Defendants, D. 45-5 ¶ 28, nor do they dispute that EMC has not otherwise marked the Pinti Note as satisfied. D. 31 ¶ 27; see D. 45-5 ¶ 27.[1] Given this record, the Court concludes that the record establishes that the discharge occurred in error.

_____

[1] Defendants' argument about unjust enrichment, D. 45-1 at 13, does not warrant a different conclusion. Here, even as Defendants have not made payments on the Pinti Mortgage, Emigrant has not brought a claim for unjust enrichment and notes that it "merely relies upon Defendants' unjust enrichment as evidence that the discharge of [the Pinti] [M]ortgage was recorded by mistake, and is not seeking money damages under an independent state law claim for unjust enrichment." D. 46 at 9.

Defendants, with no supporting case law, argue that even if there was a mistake made, it was a unilateral mistake and thus Emigrant's remedy should be against EMC because EMC made the mistake.  D. 45-1 at 12.  Defendants also argue, again without any citation to case law, that Emigrant is not entitled to a remedy because EMC's mistake was based on a business decision to act without retaining an attorney to properly advise it.  Id. at 16-17.  As discussed above, however, "where a mortgage has been discharged by mistake, equity will set the discharge aside and reinstate the mortgage to the position the parties intended it to occupy . . ."  North Easton Co-op. Bank, 300 Mass. at 292.

### D. Defendants' Assertion That Emigrant Has Perpetrated a Fraud on the Court

A fraud on the court occurs "where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."  Aoude v. Mobil Oil Corporation, 892 F.2d 1115, 1118 (1st Cir. 1989).  Defendants must surmount a "high bar" to obtain relief for fraud upon the court.  United States v. 6 Fox St., 480 F.3d 38, 46 (1st Cir. 2007).  "[T]he power of a court to set aside a judgment for fraud upon the court . . .  [is a] traditional inherent power of a court to protect its own essential functioning and integrity.  It is, however, a power rarely to be used."  Simon v. Navon, 116 F.3d 1, 6 (1st Cir. 1997).  A finding of fraud upon the court "may be justified only by the most egregious misconduct directed to the court itself, and . . . it must be supported by clear, unequivocal and convincing evidence."  United States v. Yeje-Cabrera, 430 F.3d 1, 29 n. 22 (1st Cir. 2005) (citation and quotation marks omitted).

First, Defendants assert that EMC perpetrated a fraud on the Court because in Pinti I and Pinti II, EMC argued that it was the true holder of the Pinti Mortgage, despite knowing it was

merely servicing that mortgage.  D. 45-1 at 8.  Defendants however have misconstrued EMC's argument.  In <u>Pinti II</u>, EMC never denied being the servicer of the loan.  Instead, EMC argued that, as the servicer, it was authorized to act on behalf of Emigrant, the holder of the Pinti Note.  <u>Pinti II</u>, D. 12 at 7.

Defendants also argue that Emigrant has committed fraud because its assignment of the discharged Pinti Mortgage is fictitious.  D. 45-1 at 8.   Defendants, however, have provided no evidence or legal authority for the assertion that the notarized assignments Emigrant provided in this case are fictitious or false.  To the extent that Defendants allege that EMC and Emigrant committed fraud on the Court because both parties have at one time alleged they have standing to bring these claims, such would not suffice to establish fraud because "[c]hanging legal or factual positions in different cases . . . falls significantly short of committing a fraud on the court."  <u>Lu v. Menino</u>, 98 F. Supp. 3d 85, 99 n. 12 (D. Mass. 2015).  For all of these reasons, Defendants have failed, on this undisputed record, to meet the high burden that is necessary to establish that a party has committed fraud on the Court.

### E.   **Defendants' Chapter 93A Counterclaim Is Time Barred**

In their counterclaim, Defendants allege that Emigrant engaged in unfair and deceptive practices by repeatedly attempting to seize the Property and sending fraudulent mailings, including notices of Servicemembers Civil Relief Act in Massachusetts Land Court and notices of intent to auction the Property in violation of Chapter 93A.  D. 20 at 10.  Defendants' Chapter 93A counterclaim is governed by a four-year statute of limitations.  Mass. Gen. L. c. 260, § 5A.  Under Massachusetts law, "[t]he limitations period begins to run 'when a [party] discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct.'"  <u>Epstein v. C.R. Bard, Inc.</u>, 460 F.3d 183, 187 (1st Cir.

2006) (quoting <u>Bowen v. Eli Lilly & Co.</u>, 408 Mass. 204, 205–06, 557 (1990)).   Under the discovery rule, "the limitations period is tolled until 'events occur or facts surface which would cause a reasonably prudent person to become aware that she or he had been harmed.'"   <u>Epstein,</u> 460 F.3d at 187 (quoting <u>Felton v. Labor Relations Comm'n</u>, 33 Mass. App. Ct. 926, 927 (1992)). This discovery must include two components:  "not only knowledge that one has been injured but knowledge of its cause—that [the party] 'has been harmed as a result of the defendant's conduct.'"  <u>Fidler v. Eastman Kodak Co.</u>, 714 F.2d 192, 198 (1st Cir. 1983) (quoting <u>Olsen v. Bell Tel. Labs.</u>, Inc., 388 Mass. 171, 175 (1983)).

Here, Defendants reasonably knew as on August 9, 2012, the date that EMC attempted to foreclose on the Property, of the conduct that it alleges violates Chapter 93A.  D. 45-5 ¶¶ 14-16; 19.  Thus, Defendants' claim expired four years later, on August 9, 2016.  Defendants did not assert their claim for violations of Chapter 93A until May 18, 2020, <u>see</u> D. 20, thus the statute of limitations bars their claim.

Defendants do not appear to dispute that the statute of limitations has passed on their Chapter 93A counterclaim.  Instead, they argue that in equity it would be "unfair" to dismiss their claim but allow Emigrant "to delay in bringing its action, to prevent meritorious claims, that were held back because of the discharge." D. 45-1 at 15.  The Court, however, does not conclude that Emigrant's claim was delayed unreasonably when it was brought within the requisite statute of limitations period.  See <u>Petrella v. Metro-Godlwyn-Mayer, Inc.</u>, 572 U.S. 663, 679 (2014) (holding that laches cannot defeat a claim brought within the period prescribed by statute of limitations). As this Court previously noted, D. 13 at 6, "[a]n action for the recovery of land shall commence . . . within twenty years after the right of action . . . first accrue[s]."  Mass. Gen. L. c. 260 § 21; <u>see</u> <u>McWilliam v. McWilliam</u>, __ Mass. App. Ct. __, 46 N.E.3d 598, 2016 WL 857420, at *1 (Mar.

4, 2016) (ruling that Section 21 applied to a declaratory judgment seeking determination that transfer of deed was null and void). Here, the record establishes that Defendants recorded the discharge of the Pinti Mortgage on July 29, 2015, D. 45-5 ¶ 38, thus the statute of limitations for any claim regarding same by Emigrant expires twenty years from July 29, 2015. Given that Emigrant brought its claim within the requisite statute of limitations, D. 1, the Court cannot conclude that Emigrant delayed in bringing its action.

To the extent that Defendants argue that because Emigrant's claim has a longer statute of limitations period, the Court should equitably toll the statute of limitation for Defendants' Chapter 93A claims, they do not cite any case law for this proposition. Massachusetts law, moreover, stresses that "equitable tolling is proper only when [a party] has in some extraordinary way . . . been prevented from asserting his or her rights." Mosso v. Matesanz, No. 00-10199-GAO, 2001 WL 1688900, at *1 (Dec. 5, 2001) (citation and quotation omitted). Defendants have not explained why any alleged delay on the part of Emigrant to file its claim prevented Defendants from bringing for their own Chapter 93A claim. Thus, the Court will not equitably toll the statute of limitations for Defendants' counterclaim and their Chapter 93A counterclaim is time barred.[2]

### F.   Defendants' Counterclaim for Intentional and Negligent Infliction of Emotional Distress

Defendants assert that Emigrant negligently inflicted emotional distress when it failed to have EMC "confirm that it had the authority to attempt to foreclose, and this negligence is the direct cause of the harm suffered by Linda Pinti." D. 20 at 11. Emigrant asserts that this claim is barred by the doctrine of claim preclusion and fails on the merits. D. 29 at 16-20. First, as previously discussed, a claim is precluded under *res judicata* if there is "(1) a final judgment on

---

[2] Given this ruling, the Court need not reach Emigrant's arguments on the merits or its argument that Defendants' Chapter 93A claim is barred by *res judicata*. D. 29 at 11, 13-16.

the merits in an earlier action; (2) sufficient identity between the causes of action asserted in the earlier and later suits; and (3) sufficient identity between the parties in the two suits." Bay State HMO Mgmt., Inc., 181 F.3d at 177.  Here, Defendants previously brought a negligent infliction of emotional distress claim in Pinti II premised on EMC's efforts to foreclose the Pinti Mortgage. Pinti II, D. 31-1 at 7.  The Court in Pinti II, made a final judgment on the merits of this claim when it entered summary judgment in favor of EMC on this claim.  Pinti II, D. 54 ¶ 3.  Second, there is sufficient identity between the causes of action asserted in Pinti II and the current case because they both arise out of EMC's conduct in attempting to foreclose the Property.  Third, EMC and Emigrant share a sufficient identity because EMC is Emigrant's servicer.  See R.G. Financial Corp. v. Vergara-Nunez, 446 F.3d 178, 185-86 (1st Cir. 2006) (holding that "[t]ypically, a mortgage servicer acts as the agent of the mortgagee to effect collection of payments on the mortgage loan.  Thus, it will be a rare case in which those two parties are not perfectly identical with respect to successive suits arising out of a single mortgage transaction").  Accordingly, EMC and Emigrant have a sufficient identity in Pinti II and the current case, and Defendants' allegations of negligent infliction of emotional distress are barred.

Even if this claim was not barred by *res judicata*, it fails on the merits.  To succeed on their counterclaim for negligent infliction of emotional distress, Defendants must demonstrate that Emigrant owed them a duty of care.  See Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 239 (1st Cir. 2013) (affirming the dismissal of mortgagor's negligent infliction of emotional distress claim).  Mortgagor-mortgagee relationships, however, do not give rise to a duty of care.  Id.; see MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 495 (1st Cir. 2013) (holding that "relationship between a borrower and lender does not give rise to a duty of care under Massachusetts law").

Accordingly, the Defendants cannot establish that Emigrant negligently inflicted emotional distress where no duty exists.

Defendants also assert that Emigrant intentionally inflicted emotional distress because it allowed EMC to fraudulently attempt to foreclose on the Property, knowing the effect it would reasonably have on Pinti. D. 20 at 11. Unlike Defendants' claim for negligent infliction of emotional distress, Defendants previously did not assert this claim. "[C]laim preclusion [however,] bars the relitigation of any issue that was, or might have been, raised in respect to subject matter of the prior litigation prior litigation." Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994) (citations omitted). Defendants' counterclaim for intentional infliction of emotional distress is premised on similar facts as its negligently infliction of emotional distress claim, namely EMC's conduct in attempting to foreclose on the Property. This conduct occurred prior to Pinti II and thus Defendants were obligated to bring such a claim in Pinti II. See Airframe Systems, Inc. v. Raytheon Co., 520 F. Supp. 2d 258, 267 (D. Mass. 2007) (ruling that claim preclusion wiped out liability based on any actions or conduct preceding the court's prior decision).

Even assuming however that Defendants' claim for intentional infliction of emotional distress is not barred, it too fails on the merits. Under Massachusetts law, a claimant must show the following for a claim of intentional infliction of emotional distress: "(1) the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct . . . (2) the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (3) the actions of the defendant were the cause of the plaintiff's distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it." Payton v. Abbott Labs, 386 Mass. 540, 555 (1982). "Liability cannot be

predicated on mere insults, indignities, threats, annoyances, petty oppressions or other trivialities[,] nor even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997) (citations and quotation marks omitted).

Here, there is no support for an assertion that Emigrant or EMC acted intentionally to inflict emotional distress, nor have Defendants provided any argument as to how an attempted foreclosure of a home—even a wrongful one would constitute extreme and outrageous conduct. Moreover, "while home foreclosure is a terrible event and likely fraught with unique emotions and angst, foreclosures, even ones that may involve improper conduct, do not readily go beyond all possible bounds of decency." Asfour v. Citizens Bank, N.A., No. 16-11732-FDS, 2016 WL 7428224, at *6 (D. Mass. Dec. 23, 2016) (citing Payton v. Wells Fargo Bank, N.A., 2013 WL 782601, at *4 (D. Mass. Feb. 28, 2013) (quoting Alvarez v. U.S. Bank N.A., 2012 WL 2394680, at *9 (D. Mass. June 22, 2012)). Accordingly, the Court allows Emigrant's motion for summary judgment as to Defendants' counterclaims for negligent and intentional infliction of emotional distress.

### G.   Defendants' Defense of Laches Claim Is Without Merit

"A defense of laches exists upon a factual finding that there has been unjustified, unreasonable, and prejudicial delay in raising a claim." Santagate v. Tower, 64 Mass. App. Ct. 324, 333 (2005) (citation omitted). Defendants argue that there is a factual dispute as to why Emigrant waited "from 2012 to the filing of the instant case to assert their rights." D. 45-1 at 15. A defense of laches, however, cannot be invoked to bar legal relief in the face of a statute of limitations enacted by Congress. SCA Hygiene Products Aktiebolag v. First Quality Baby

19

Products, LLC, __ U.S. __, 137 S. Ct. 954, 959 (2017).   As discussed above, the statute of limitations for Emigrant's claim is twenty years from July 29, 2015.  That date has not yet passed. Thus, the Court does not conclude as a matter of equity or otherwise that Emigrant's claim was delayed unreasonably.  See Petrella, 572 U.S. at 675-81 (holding that laches cannot defeat a claim brought within the period prescribed by statute of limitations).

### H.    Emigrant Has Not Acted with Unclean Hands

Defendants lastly argue that Emigrant has acted with unclean hands and thus should be denied a recovery in equity.  D. 45-1 at 10.   Defendants contend that EMC "acted with unclean hands when it told Defendants that they were the mortgage holder."  Id.  The doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief."  Precision Instrument Mfg. Co. v. Auto. Maintenance Mach. Co., 324 U.S. 806, 814 (1945).   Defendants' argument fails, however, because "[t]he question here is not whether a party to the proceeding relied on the position, but rather whether the court did so in reaching its decision."   Rederford v U.S. Airways, Inc., 589 F.3d 30, 38 (1st Cir. 2009). Here, the doctrine of unclean hands is not applicable because the Court in Pinti II did not rely on an assertion that EMC was the holder of record of the mortgage in its findings.  See Fleet Nat'l Bank v. Gray, 375 F.3d 51, 60 (1st Cir. 2004) (rejecting a judicial estoppel claim because "[a]t no time did the bankruptcy court accept the legal or factual assertions of the complaint").  Instead, in Pinti II, Defendants argued, Pinti II, D. 45 at 19-20, and the Court accepted as true, that EMC was not the mortgagee on August 9, 2012 because the mortgage had been assigned to ESB-MH.  Pinti II, D. 110 at 5.

**VI.   Conclusion**

For the foregoing reasons, the Court ALLOWS Emigrant's motion for summary judgment, D. 28.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge